**CLOSED**

NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RICHARD BAGAROZY, | : | |
| | : | Civil Action No. 08-0468 (SRC) |
| Petitioner, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| BERNARD GOODWIN, | : | |
| ADMINISTRATOR, SPECIAL | : | |
| TREATMENT UNIT, MIDDLESEX | : | |
| COUNTY CORRECTIONAL FACILITY, | : | |
| | : | |
| Respondent. | | |

**CHESLER**, District Judge

     This case comes before the Court on the petition filed by Richard Bagarozy ("Petitioner" or "Mr. Bagarozy") for issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. After consideration of the parties' submissions and facts attendant, it is the order of this Court that Mr. Bagarozy's petition be DENIED.

### PROCEDURAL HISTORY AND STATEMENT OF FACTS

     Petitioner is seeking release from his confinement at the Special Treatment Unit Annex ("STU") in Avenel, New Jersey, where he is being held for treatment pursuant to a court Order under the New Jersey Sexually Violent Predator Act ("SVPA" or "the Act"). (Pet'r's Br. in Support of Pet. for a Writ of Habeas Corpus, "Pet'r Br.," [Docket Item 1-11], at 1.) His commitment followed a finding by Judge Philip M. Freedman of the Superior Court of New Jersey that Petitioner had been proven by clear and convincing evidence to be a sexually violent

predator in need of confinement under the provisions of the Act.  See In Re Civil Commitment of R.Z.B., 919 A.2d 864, 870 (N.J. Super. App. Div. 2007), cert. denied, 927 A.2d 1294 (N.J. 2007)

Petitioner has a long history of involvement in the state and federal judicial systems.  In 1983, after being charged with engaging in oral sex acts with underage boys, aged nine, thirteen and fourteen, and having photographed one of these encounters, he pled guilty to sodomy in the second and third degrees in a New York state court.  See R.Z.B., 919 A.2d at 866, 870.  He was subsequently sentenced to two consecutive five year probation periods.  Id. at 866.

In 1985, while on probation for his first conviction, Petitioner was again arrested in New York and charged with committing sodomy with three boys, aged eleven through fourteen.  Id. Although he was found guilty by a jury, his conviction was reversed on appeal and remanded.  Id. at 866-67.  Petitioner ultimately pled guilty to one count of sodomy and was sentenced to a prison term of one to three years, which was extended due to his probation violation.  Id. at 867. Petitioner was paroled in January of 1992.  Id.

In June of 1993, Petitioner and Edward Federowicz purchased a house in Bayonne, New Jersey.  (Sentencing Findings and Conclusions, Ex. C to Kamison Decl., 1:7-11.)  Shortly after moving into the house, Petitioner and Federowicz placed an advertisement in the newspaper seeking "boys between the ages of 15 and a half and 17 and a half" to apply to do construction on the Bayonne house.  (Id. at 4:18-21.)  Between June and September 1993, Petitioner hired several underprivileged young males to work at the house.  (Id. at 5:20-24.)  However, testimony at Petitioner's federal trial later revealed that he also participated in various acts of a sexual nature with the young boys, including bringing them to a nude beach, showering with them, and playing games where the boys were given incentives to remove their clothing.  (Id. at 5:20-6:6.)  At some

2

point while living in the house, Petitioner made two sexually-oriented videotapes involving the young men: one of himself and two seventeen year-old boys stripping and "frolicking in various stages of sexual arousal," and one of a naked thirteen-year old boy whom Petitioner asked to "assume various poses" while at the beach.  (Id. at 7:3-20; 9:16-24.)

During that period, local police were alerted by an informant that Petitioner and Federowicz were possibly transporting minors to the house to engage in sexual activities.  (Id. at 4:11-16.)  Thereafter, state police began conducting surveillance on the house.  (Id. at 4:22-24.)  In 1993, an undercover New Jersey State Police Officer posed as a person interested in young boys, established a relationship with Petitioner, and offered to provide Petitioner a projector to allow him to view film slides of young boys that Petitioner had in his possession.  (Id. at 5:2-9; 8:9-20).  The undercover agent also arranged to purchase slides from Petitioner for $25,000.  R.Z.B., 919 A.2d at 867.  A number of the slides, which Petitioner had transported from New York to the house in Bayonne, contained images of a prepubescent boy with an erection.  Id.; (Ex. C to Kamison Decl. at 8:10-11; 9:3-4).  When the undercover agent viewed the pornographic slides, Bayonne police officers entered home and arrested Petitioner and Federowicz.  R.Z.B., 919 A.2d at 867.  Petitioner and Federowicz were charged with several counts of conspiracy.  (Ex C. to Kamison Decl. at 1:23-3:25.)

Based on evidence provided by the undercover agent, as well as testimony from the boys living in the house and evidence garnered there, in April of 1995, a federal jury convicted the Petitioner of conspiracy to commit various sexual offenses involving minors, enticing minors to engage in sexually explicit activities for the purpose of producing a visual depiction of the same, transporting such depictions across state borders, and possessing and receiving child

pornography.  (Id. at 1-3, 14-15.)  For these crimes, Petitioner was sentenced by Judge Dickinson

R. Debevoise of the U.S. District Court in New Jersey to 121 months in federal prison to be

followed by a period of supervised release of three years.  (Id. at 27:14-28:4.)

Petitioner was released from federal custody on September 25, 2002.  R.Z.B., 919 A.2d at

868.  One year later, he violated the terms of his parole by traveling outside the state of New

Jersey on three occasions in 2003 and consorting with his co-conspirator, Mr. Federowicz.

(Summons, Ex. I to Kamison Cert.)  He again appeared before Judge Debevoise, who found

Petitioner guilty of these violations and sentenced him to three months at the Fort Dix federal

correctional facility.  (Am. Order, Ex. J to Kamison Cert.)

On March 24, 2004, shortly before Mr. Bagarozy's scheduled release from Fort Dix, the

Hudson County Prosecutor's Office alerted the New Jersey Attorney General of Petitioner's

pending release and recommended his consideration for civil commitment under the SVPA.  (Ltr.

to AG Mitchell, Ex. K to Kamison Cert.)  On April 5, 2004, the State petitioned to have Mr.

Bagarozy civilly committed under the Act.  (Pet. of N.J. AG, Ex. M to Kamison Cert.)  The

Superior Court of New Jersey, having reviewed the State's Petition, found probable cause to

believe Petitioner suffered from a mental abnormality that required civil confinement and

scheduled Petitioner for a final hearing on the issue of his commitment.  (Order for Temporary

Civil Commitment, Ex. N to Kamison Cert.)

At some point after the State's petition, Mr. Bagarozy wrote to Judge Debevoise to notify

him of the commitment proceedings.  (Judge Debevoise Ltr., Ex. A to Kamison Cert.)  On or

about May 14, 2004, Judge Debevoise responded by letter in which he expressed concern at the

"continued confinement" of the Petitioner, given that he believed Petitioner to be capable of

leading a "constructive life."  (Id.)  Judge Debevoise's letter was entered into the record of evidence compiled for Petitioner's commitment hearing before the New Jersey Superior Court. (Pet.'s Br. to N.J. App. Div., Ex. D to DaCosta Cert., at 9.)

Petitioner's civil commitment hearing began on December 20, 2004, before Judge Freedman.  (Tr. of Civil 12-20-04 Commitment Hrg., Ex. P to Kamison Cert. at 1.)  Five medical experts testified at the hearing based upon their review of evidentiary documents, prior proceedings, and their personal examinations of Petitioner.  R.Z.B., 919 A.2d at 869-70.

The State presented two expert witnesses: Dr. Natalie Barone, a psychologist, and Dr. Michael R. McAllister, a psychiatrist.  (Ex. P to Kamison Cert. at 18:7-8; Tr. of 12-21-04 Commitment Hrg., Ex. U to Kamison Cert. at 3:21-22.)  He .)  Dr. Barone testified that she believed Petitioner to be a "psychopath" who displayed the manifestations of pedophilia, paraphilia, hebephilia, and anti-social personality disorder.  (Ex. P at 98:16-100:3; 104:7-11.) She also testified that Petitioner had a "high risk" of committing a sexual offense in the near future if released.  (Id. at 108:21-24.)  Dr. McAllister diagnosed Mr. Bagarozy with pedophilia, paraphilia, and with a personality disorder NOS (Not Otherwise Specified) displaying psychopathic features.  (Ex. U at 44:5-47:17.)  He testified that without "substantial treatment," there is an "extreme" risk that Mr. Bagarozy will reoffend.  (Id. at 51:2-8.)

Three expert witnesses testified on behalf of Mr. Bagarozy: Dr. Timothy Foley, a psychologist; Dr. Martinez, Petitioner's treating therapist; and Dr. Roger Harris, a psychiatrist. R.Z.B., 919 A.2d at 870.  Dr. Foley diagnosed Petitioner with pedophilia and personality disorder NOS.  Id.  Dr. Martinez noted that Petitioner could be released into the community if treated successfully and supervised.  Id.  Finally, Dr. Harris testified that Petitioner suffered from

pedophilia, paraphilia, narcissism, and anti-social personality traits.  Id.  Dr. Harris admitted that Petitioner's risk of reoffense was high and suggested several conditions that needed to be in place if he were released, including "sex offender therapy, workplace prohibitions on contact with children or teenagers, frequent polygraph exams, anti-androgen medications, computer monitoring, and continued placement on the Megan's Law registry."  Id.

Following the testimony and evidence presented, Judge Freedman found that Petitioner should be committed pursuant to the SVPA.  Id.  In short, Judge Freedman found that the State had presented clear and convincing evidence that Petitioner had committed sexually violent predicate offenses in New York, and that Petitioner has a mental abnormality which makes him a threat to society if not committed.  (Transcript of Hearing, Ex. Q to Kamison Cert. at 14:3-15; 71:14-22; 72:7-73:8; 74:8-17.)  Judge Freedman specifically noted in his ruling that Petitioner was "highly likely to engage in [sexually assaultive] conduct within the reasonably foreseeable future" if not confined.  (Id. at 74:10-12.)  As such, on February 17, 2005, Judge Freedman ordered that Petitioner be confined, pursuant to the Act, to the Special Treatment Unit ("STU") to receive treatment.[1]  (Id. at 75:6-7); R.Z.B., 919 A.2d at 871.

Following his civil commitment hearing and its ensuing order of commitment, Petitioner appealed to the Superior Court of New Jersey, Appellate Division for reversal of the Order. R.Z.B., 919 A.2d at 866.  Petitioner's state appeal was eventually denied, as was his writ of certiorari to the New Jersey Supreme Court.  Id. at 877, cert. denied, 927 A.2d 1294 (N.J. 2007).

---

[1] Pursuant to the Act, Petitioner is entitled to an annual rehearing to determine if his commitment is still justified.  N.J.S.A. §30:4-27.35.  If a court determines at a subsequent review hearing that Petitioner's commitment should be continued, his confinement will be renewed for another year.  Id.

On June 29, 2004, Petitioner filed, *pro se*, a civil complaint pursuant to 42 U.S.C. §1983, alleging deprivation of his federal and state constitutional and statutory rights caused by the conditions of his confinement. (Civil Complaint, Docket No. 04-3066, at ¶¶ 1-2.) He later applied for, and was granted pro bono counsel to represent him in this matter. (Application for Pro Bono Counsel, Docket No. 04-3066 at docket item 6.) This case was later consolidated with related matters involving claims of other individuals confined at the STU and is still ongoing. (Consolidation Order, Docket No. 04-3066 at docket item 100.)

On March 12, 2007, Petitioner, along with four other named plaintiffs, filed a second complaint in this Court pursuant to 42 U.S.C. §1983, in which they sought: to have the SVPA declared unconstitutional, an order directing "the least restrictive means of confinement be mandated," and a mandatory injunction directing evaluation and release of plaintiffs; as well as $10 million in compensatory and punitive damages. See Fournier v. Corzine, No. 07-1212, 2007 WL 2159584, at *1 (D.N.J. July 26, 2007). That matter was largely dismissed, although a few claims were allowed to proceed. Id. at *17. On June 6, 2008, that case was consolidated with the civil rights case into which Petitioner's June action was also consolidated. (Letter Order and Opinion, Docket No. 07-1212 at docket item 61.)

On June 29, 2006, Mr. Bagarozy filed a Petition for Writ of Habeas Corpus with the Court, seeking the same relief he requests in the instant action. (Pet. for Writ of Habeas Corpus, Docket No. 06-00712 at docket item 1.) The Court denied the application without prejudice on September 18, 2006, because of Petitioner's failure to exhaust the remedies available to him through state court proceedings. (Am. Order, Docket No. 06-00712 at docket item 22.)

On September 21, 2007, Petitioner, along with fifteen other named plaintiffs, filed a third complaint in this Court pursuant to 42 U.S.C. §1983 seeking damages for the allegedly unconstitutional conditions at the STU.  See Banda v. Corzine, No. 07-4508, 2007 WL 3243917, at *1 (D.N.J. Nov. 1, 2007).   In the Banda action, claimants requested approximately $1.24 billion in monetary damages asserted against over 100 defendants, a large number of whom were state governmental officials.  Id. at *5.  The conditions of the treatment facility that were alleged to be unconstitutional included unlawful prison searches for controlled substances, wrongful imposition of exposure to hot weather, inadequately chilled drinking water, and the brandishing of intimidating weapons.  Id. at *4.   Plaintiffs' claims were dismissed for failure to state a claim upon which relief could be granted.  Id. at *21-22, reconsideration denied, No. 07-4508, 2008 WL 58824 (D.N.J. Jan. 3, 2008).

On January 25, 2008, after exhausting his state remedies, Petitioner filed this action through his pro bono counsel. (Docket Item 1.)  In this petition for habeas corpus, Petitioner presents the following arguments: 1) that his due process rights have been violated because the SVPA is unconstitutionally vague and overly broad in scope; 2) that his fundamental fairness rights under the New Jersey Constitution have been violated; 3) that the SVPA is punitive in nature and therefore violates the constitutional protections against *ex post facto* laws and double jeopardy; 4) that the SVPA is unconstitutional because it fails to afford Petitioner a jury trial; 5) that the New Jersey trial court relied on inadmissible expert opinions in making Petitioner's commitment determination; and 6) that the New Jersey Attorney General exceeded his statutory authority and violated the Interstate Correction Compact in seeking Petitioner's commitment under the SVPA.

## ANALYSIS

### I.      Scope of Federal Habeas Review

A District Court may hear a petition for habeas corpus relief on behalf of an individual confined pursuant to a State court judgment solely on the grounds that the individual's custody violates the Constitution or other matters of federal law.  28 U.S.C. §2254.  A petition for habeas corpus will not be granted for any claim already "adjudicated on the merits in a State court [proceeding] unless" that claim either resulted in a decision contrary to clearly established federal law, or resulted in a decision predicated on an unreasonable determination of the facts presented in the State court proceeding.  Id.  In the context of habeas corpus review, a district court is "required to give deference to the factual findings of both the state trial and appellate courts." Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996).  "[F]ederal habeas courts must make as the starting point of their analysis the state courts' determinations of fact," as Congress intended to give deference to the factual determinations of state courts in structuring the language of the habeas statute.  See Williams v. Taylor, 529 U.S. 362, 386 (2000).  Concurrently, state court judgements of law "must be upheld unless, after the closest examination[,] . . . a federal court is firmly convinced that a federal constitutional right has been violated."  Id. at 389.

### II.     Nature of the SVPA

#### A.      Legislative History and Structure of the Act

The New Jersey legislature promulgated the SVPA in 1998 and it became effective on August 12, 1999.  N.J.S.A. 30:4-27.24.  In enacting the SVPA, the legislature found that "[c]ertain individuals who commit sex offenses suffer from mental abnormalities or personality disorders which make them likely to engage in repeat acts of predatory sexual violence if not

9

treated." N.J.S.A. 30:4-27.25.  The Act was developed in recognition of the need to "modify the involuntary civil commitment process" in order to commit "those sexually violent predators who pose a danger to others [if] returned to society."  Id.

The procedure for civil commitment typically begins when an "agency with jurisdiction"[2] provides notice to the Attorney General of a person who "may meet the criteria" of a "sexually violent predator."  N.J.S.A. 30:4-27.27(a).  A "sexually violent predator" is defined as:

> a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, *and* suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.

N.J.S.A. 30:4-27.26 (emphasis provided).  The agency must provide such "notice to the Attorney General 90 days, or as soon as practicable, prior to . . . the anticipated release from total confinement" of a person who is currently confined and who qualifies under the Act.  N.J.S.A. 30:4-27.27(a).  However, the Attorney General, "in exercise of the State's authority as parens patriae," is authorized to initiate commitment proceedings against any person that qualifies under the provisions of the Act, regardless of the person's incarceration status.  N.J.S.A. 30:4-27.28(d).

Upon notice of an individual's eligibility under the Act, the Attorney General may first petition a court for a probable cause finding that such individual is a sexually violent predator.  N.J.S.A. 30:4-27.28.  If the individual is criminally confined and not already under the care of a psychiatric facility, the Attorney General must submit with his or her petition two certificates, at

---

[2] The Act defines an "agency with jurisdiction" as any agency "which releases upon lawful order or authority a person who is serving a sentence or term of confinement, or is otherwise being detained or maintained in custody."  N.J.S.A. 30:4-27.26.

least one of which was prepared by a psychiatrist, which supports his or her contentions.  Id.  If a court finds there is probable cause to believe the individual at issue is a sexually violent predator, it will order a final hearing and authorize the temporary commitment of the individual until his or her hearing has been resolved.  Id.

An individual subject to a final commitment hearing has the right to counsel, the right to present evidence, and the right to cross-examine witnesses.  N.J.S.A. 30:4-27.31.  The State must prove, by clear and convincing evidence, that an individual is a sexually violent predator. N.J.S.A. 30:4-27.32.  To prove that a person is a "sexually violent predator," as defined by the Act, the State must demonstrate that the individual: 1) has committed a predicate offense, and 2) suffers from a present mental abnormality such that the individual presents a danger to society unless confined.  N.J.S.A. 30:4-27.26.

An individual deemed to be a "sexually violent predator" requiring commitment under the Act is thereafter referred to the STU, run by the Department of Corrections.  N.J.S.A. 30:4-27.34.  An Individual confined to the STU receives treatment tailored to his or her needs arranged by the Division of Mental Health Services.  Id.

A person committed under the Act is entitled to an annual court review hearing in which the same procedure described above is undergone and the reviewing court issues a new order either continuing or discontinuing that person's commitment.  N.J.S.A. 30:4-27.30, 27.35. Additionally, at any time during a person's commitment, he or she may petition a court for discharge based on conditions that have changed from the person's prior hearing or petition for release.  N.J.S.A. 30:4-27.36.  Alternatively, a person may be released from commitment if his or

her treatment team petitions a court for discharge based on a finding that the person's mental condition has changed for the better.  Id.

**B.**     **Civil Nature of the SVPA**

Several of Petitioner's arguments are contingent upon the nature of the SVPA as a civil or criminal statute.  "The question whether a particular proceeding is criminal . . . is first of all a question of statutory construction."  Allen v. Illinois, 478 U.S. 364, 369 (1986).  A court may reject the legislature's manifest intent to consider a statute civil in nature "only where a party challenging the statute provides 'the clearest proof' the 'the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's intention].'"  Kansas v. Hendricks, 521 U.S. 346, 361 (1997) (citing United States v. Ward, 448 U.S. 242, 248-249 (1980).

The United States Supreme Court addressed this issue in its review of the Kansas Sexually Violent Predator Act, which it found to be civil in nature.  See id. at 368-69.  In short, the Court held the Kansas SVPA to be civil rather than criminal because: it was not aimed towards retribution or deterrence, the primary objectives of criminal punishment; commitment under the Kansas act was based on an individual's "mental abnormality" rather than his or her criminal intent; and the legislature did not intend the act to be punitive.  Id. at 361-63.

Likewise, the New Jersey Supreme Court has found the SVPA is not a criminal statute. State v. Bellamy, 835 A.2d 1231, 1238 (N.J. 2003).  See also, In re Commitment of W.Z., 801 A.2d 205, 211 (N.J. 2002) (noting that SVPA is "virtually identical" to the Kansas civil statute at issue in Hendricks).  The Bellamy court held that the SVPA "is neither penal nor direct," but rather, the "Act focuses on a sex offender's mental condition and the dangers posed to the public."  Id. at 1237-38.  The court further explained that "commitment does not automatically

12

flow from the conviction." Id. at 1238.  Instead, "the Attorney General must initiate the involuntary commitment procedure," and a court must then determine if "there is probable cause to believe that the person is a sexually violent predator in need of involuntary commitment."  Id.

Likewise, Courts of this District have adopted the view that the SVPA is a civil statute. See, e.g., Bailey v. N.J. Attorney Gen., No. 04-1499, 2006 WL 2264031, at *9 (D.N.J. Aug. 8, 2006) (holding that SVPA is a civil statute); Rivera v. Rogers, No. 05-3385, 2006 WL 3399427, at *9 (D.N.J. Nov. 20, 2006) (acknowledging both that the SVPA is a civil statute, and it is "essentially the same as the Kansas . . . statut[e]" that was upheld in Hendricks); Fournier v. Corzine, No. 07-1212, 2007 WL 2159584, at *10 (D.N.J. July 26, 2007) (using civil nature of the Act and its similarity to the statute in Hendricks to reject Mr. Bagarozy's own claims in another action that the SVPA violates ex post facto and double jeopardy doctrines).

The above findings are buttressed by the fact that the New Jersey legislature declared that the SVPA establishes a "civil procedure" aimed at "modify[ing] the involuntary civil commitment process."  N.J.S.A. 30:4-27.25.  See also, Bailey, 2006 WL 2264031 at *9 (citing N.J.S.A. 30:4-27.24 (Assembly Appropriations Committee Statement)).  Therefore, this Court is satisfied that the SVPA must be viewed as a civil statute, similar to that which was already upheld in the Hendricks matter.  With these principles in mind, the Court turns to Petitioner's arguments.

## III.   Unconstitutional Vagueness or Overbreadth of the SVPA

Petitioner makes two arguments relating to his position that he was denied due process because the SVPA is unconstitutionally vague and/or overbroad.  (Petr's Br. at 14-17, 21-22.) Petitioner first contends that he was denied due process because the SVPA did not provide him

notice that he could be subject to commitment sixteen months after having been initially released from federal prison. (Id. at 14-17.) Petitioner also claims that the SVPA is unconstitutionally vague and overbroad because its discretionary clause permitted the commitment judge to find his federal conviction constituted a predicate act. (Id. at 21-22.) Petitioner's federal due process claims, as argued here, are without merit.

### A.      Petitioner's Passage of Time Argument

Petitioner first argues that the SVPA is unconstitutionally vague and overbroad because it permitted the New Jersey state authorities to seek his commitment over a year after he completed a term of incarceration for child pornography convictions. (Id. at 14-17.) Petitioner contends that he carried out his life in a wholly lawful manner and making strides in his rehabilitation during the sixteen months between his September 2002 release on the federal conviction and re-incarceration for violating the terms of his supervised release.[3] Petitioner takes the position that the fact that a civil commitment is possible under the SVPA despite the long passage of time between incarceration for a predicate offense[4] and the State's petition for commitment demonstrates that the Act is unconstitutionally vague. (Id. at 15-17.)

_____

[3] To support his contentions, Petitioner points to the results of a polygraph test and a letter submitted by sentencing Judge Debevoise as evidence of his rehabilitation during the sixteen months. (Pet'r Br. at 15-17.) As the State notes in its response, Petitioner is attempting to contest the sufficiency of the evidence presented at his commitment hearing. (Resp't Br. at 6-7.) Petitioner's evidentiary challenges are not appropriate for review or consideration by the Court here. See 28 U.S.C. §2254(d).

[4] Petitioner's argument based on time elapsed between predicate offense and civil commitment proceedings assumes that the federal conviction constituted an offense on which his commitment was based. The record of this case, and specifically the New Jersey Appellate Division's opinion affirming Petitioner's commitment, belie that presupposition. In any event, the significance of the federal offense is immaterial to the Court's analysis of Petitioner's void for vagueness argument.

The void for vagueness doctrine holds that a statute is unconstitutional if it is so vague that it fails to provide notice to average individuals of prohibited conduct or fails to provide minimal guidelines such that arbitrary or discriminatory enforcement of the statute ensues. Kolender v. Lawson, 461 U.S. 352, 357-58 (1983).  An important goal of the vagueness doctrine is to "establish minimal guidelines" to govern the enforcement of laws so that individuals are not subject to the whim of persons with enforcement power.  Id. (citing Smith v. Goguen, 415 U.S. 566, 574 (1974)).

The New Jersey Supreme Court as well as the United States District Court for the District of New Jersey have, in other actions, addressed and rejected various arguments contending that the SVPA is unconstitutionally vague and/or overbroad.  See, e.g. Jennings v. Rogers, No. 06-5025, 2008 WL 2020175, at *9-11 (D.N.J. May 2, 2008) (rejecting argument that policies used to select candidates for civil commitment do not give fair notice of prohibited conduct or fair warning of who can be classified as "dangerous" under the Act); Fournier, 2007 WL 2159584 at *12-15 (rejecting Mr. Bagarozy's own argument under 42 U.S.C. §1983 that the SVPA is overbroad and vague because it fails to adequately define the terms "violent" and "predator"); W.Z., 801 A.2d at 125-130 (rejecting argument that the SVPA violates substantive due process rights by failing to "narrow the class of people who may be committed under its terms").  Neither, however, has addressed the specific issue of whether the passage of time between a predicate offense and petition for commitment suggests that the SVPA is unconstitutionally vague or overbroad.  See id.

This Court will not hold the Act unconstitutionally vague on this ground.  Although no binding authority exists on this issue, nothing in the language of the Act limits the amount of

time that may pass following an individual's sexually violent predicate offense before

commitment proceedings are initiated against him.  N.J.S.A. 30:4-27.28.  The Act states,

> [w]hen it appears that a person may meet the criteria of a sexually violent predator
> as defined in [the Act], the agency with jurisdiction shall give written notice to the
> Attorney General 90 days, or as soon as practicable, prior to . . . the anticipated
> release from total confinement of a person who has been convicted of . . . a sexually
> violent offense

N.J.S.A. 30:4-27.27(a)(1).  The Act further provides that the Attorney General is not precluded

from seeking commitment of individuals who are not presently incarcerated, or who are not

incarcerated for the necessary predicate offense.  N.J.S.A. 30:4-27.28; In re Commitment of

P.Z.H., 873 A.2d 595, 599 (N.J. Super. App. Div. 2005).   The SVPA itself allows for the

commitment of "any person who has committed a sexually violent offense, without regard to

when the offense was committed or whether the person is currently incarcerated for that offense."

In re Commitment of R.Z.R., No. A-6193-02T2, 2005 WL 3533834, at *4 (N.J. Super. App. Div.

Dec. 28, 2005).

　　　　　The Court is guided by the opinions issued by the New Jersey Appellate Division, which

has directly addressed this issue in several respects. Concluding that the Act gives the Attorney

General broad authority to seek an individual's commitment, the Appellate Division held, with

regard to the absence of time constraints, "Nothing in the statute as quoted suggests that the

Attorney General may only seek commitment of a person who is about to be released from

confinement, or that the person, if confined, must have been confined for committing a predicate

offense, or that the person must have recently committed a predicate offense."  P.Z.H., 873 A.2d

at 599.  Indeed, in Petitioner's state court appeal, the Appellate Division specifically rejected the

notion that the many years between the New York sodomy offenses committed in the 1980s

16

disqualified them as predicate offenses for purposes of Petitioner's civil commitment in 2004. R.Z.B., 919 A.2d at 877. The Appellate Division concluded  that "the passage of time does not eliminate their legal significance as eligible prior convictions under the SVPA."  Id.  The court reasoned that though the crimes had occurred years ago, the SVPA requires clear and convincing evidence of an individual's present state of mental abnormality before commitment will be ordered.  R.Z.B. (citing P.Z.H., 873 A.2d at 599-600).  In another case, the Appellate Division explained that there is nothing in the Act that suggests "the legislature intended to limit 'the commitment process to inmates about to be released after serving sentences for sexually violent crimes, or even to persons whose sexually violent offenses were committed recently.'" R.Z.R., 2005 WL 3533834, at *4 (citing P.Z.H., 873 A.2d 595 at 599).  This Court agrees.

The language of the Act is clear and has been further clarified through state opinions. Petitioner cites to no binding or persuasive authority in support of his contention that the amount of time that passed between his predicate offense and the State's petition for his commitment suggests a violation of his due process rights under void-for-vagueness doctrine.  (Pet'r Br. at 14-17.)  The Court is satisfied that the SVPA is not unconstitutionally vague in this respect.

To the extent that Petitioner seeks to argue that the SVPA is overbroad because he was subject to commitment after having been released for over sixteen months without incident, Petitioner's argument is simply without merit.  A statute is unconstitutionally overbroad if it is so inadequately tailored that it infringes on or prohibits otherwise constitutionally protected conduct.  Grayned v. City of Rockford, 408 U.S. 104, 114 (1972).  Petitioner's purported overbreadth argument fails to identify how the Act "sweeps within its prohibitions" acts which

are not prohibited.  Id. at 114-15.  He makes no effort to draw any connection between his passage of time argument and the standard for overbreadth.

At best, Petitioner might be arguing that the consideration of offenses remote in time from the civil commitment proceedings violates his substantive due process rights. The Fourteenth Amendment guarantees an individual's right to substantive due process.  It provides that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV.  The Supreme Court has emphasized that "[t]he touchstone of due process is protection of the individual against arbitrary action of government."  County of Sacramento v. Lewis, 523 U.S. 833, 8450 (1998).  The standard for establishing a meritorious substantive due process claim depends on whether the challenged act is legislative or executive. County Concrete Corp. v. Township of Roxbury, 442 F.3d 159, 169 (3d Cir. 2006).  The United States Court of Appeals for the Third Circuit has summarized the standards as follows:

> There is a distinction in the standard of review for legislative and executive acts that allegedly violate substantive due process. As Judge, now Justice, Alito explained in *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139 (3d Cir.2000), "typically, a legislative act will withstand substantive due process challenge if the government 'identifies the legitimate state interest that the legislature could rationally conclude was served by the statute.' " *Id.* (citation omitted). On the other hand, non-legislative state action violates substantive due process if "arbitrary, irrational, or tainted by improper motive," or if "so egregious that it 'shocks the conscience." *Id.*

Id.

Petitioner's position that the SVPA is unconstitutional clearly implicates the standard applicable to legislative action.  Yet, he points to nothing that would negate a legitimate state interest served by the Act.  In other words, he has not established that the statute's lack of a requirement that a predicate sexually violent offense have been committed within a certain period

18

of time prior to the civil commitment proceedings based on those offenses renders the statute arbitrary or irrational.  Indeed, as discussed above, the passage of time is dealt with by the statute's requirement that the state demonstrate that the offender presently suffers from a mental abnormality such that he is likely to engage in further or continued acts of sexual violence. N.J.S.A. 30:4-27.26.  The state must do this by clear and convincing evidence.

Thus, even reading Petitioner's briefs in such a manner as to construe a substantive due process argument based on the passage of time, Petitioner fails to establish a constitutional violation.

### B.      Petitioner's Predicate Offense Argument

Petitioner next argues he was denied due process because Judge Freedman determined that his "federal convictions 'should be considered' a sexually violent crime within the meaning of N.J.S.A. 30:4-27.26."  (Pet'r Br. at 21-22.)  He asserts that "[t]he trial judge's transformation of a pornography conviction into a sexually violent offense exemplifies why this section of the SVPA is unconstitutionally vague and overbroad."  (Id. at 21.)

As the Court understands it, Petitioner is contending here that due to the SVPA's vagueness, he was not on notice that his federal offense could constitute a sexually violent predicate act under the Act.  He also appears to be arguing that the overbreadth of the statute's definition of a "sexually violent offense" allows it to encompass anything that involves improper sexual behavior, as demonstrated by the fact that Petitioner's federal child pornography

constituted a predicate offense in connection with his civil commitment.[5]  The Court, however, need not reach those issues.

Petitioner's challenge based on the commitment judge's consideration of his federal offense as a predicate offense overlooks one very significant point in the record of this case.  On the appeal of his commitment order, the New Jersey Appellate Division expressly disavowed reliance on the federal convictions in upholding the commitment order.  It found that Petitioner's two New York convictions qualified as predicate acts for SVPA commitment, and thus it did not need to consider Petitioner's argument that the commitment judge had improperly determined that his federal convictions, involving child pornography, constituted sexually violent offenses under the SVPA.  R.Z.B., 919 A.2d at 43-44.


## IV.    New Jersey Fundamental Fairness Claim

Petitioner alternatively argues that Judge Freedman erred in considering his New York sodomy offenses sexually violent predicate acts because the New Jersey doctrine of fundamental fairness requires that he have been informed of the potential for commitment when he pled guilty

---

[5] Sexually violent predicate offenses under the SVPA include:

(a) aggravated sexual assault; sexual assault; aggravated criminal sexual contact; kidnapping pursuant to subparagraph (b) of paragraph (2) of subsection c. of N.J.S.2C:13-1; criminal sexual contact; felony murder pursuant to paragraph (3) of N.J.S.2C:11-3 if the underlying crime is sexual assault; an attempt to commit any of these enumerated offenses; or a criminal offense with substantially the same elements as any offense enumerated above, entered or imposed under the laws of the United States, this State or another state; or (b) any offense for which the court makes a specific finding on the record that, based on the circumstances of the case, the person's offense should be considered a sexually violent offense.

N.J.S.A. 30:4-27.26.

to those acts in New York.  (Id. at 22-24.)  The State argues by incorporation of the brief it

submitted to the Appellate Division that Petitioner's claims lack merit.  (Resp't Br. at 7, n. 3; Br.

and App. of Resp't, Ex. B to DaCosta Decl. at 32-43.)

In support of his argument, Petitioner relies solely on State v. Bellamy, 835 A.2d 1231

(N.J. 2003).  In Bellamy, the court held that fundamental fairness as provided by the New Jersey

Constitution requires that a defendant be informed of the possibility of civil commitment when

he or she enters a guilty plea for a predicate offense.  835 A.2d at 1238.  Petitioner's reliance on

Bellamy and on state constitutional provisions is misplaced.  His argument does not involve

either "a decision that was contrary to, or involved an unreasonable application of, clearly

established federal law," or "a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in [a] State court proceeding," and therefore is not within

the scope of the Court's review here.[6]  28 U.S.C. §2254(d).  Accordingly, Petitioner's

fundamental fairness argument must fail.

## V.  Ex Post Facto and Double Jeopardy Considerations

### A.  The SVPA Does Not Violate Ex Post Facto Doctrine

Petitioner argues that the SVPA violates his constitutional protection against enforcement

of ex post facto laws.  (Pet'r Br. at 17-20.)  Specifically, Petitioner argues that because the SVPA

was "effective after the date of Mr. Bagarozy's convictions that were deemed by the trial judge as

---

[6] Although the relevant heading in Petitioner's brief states that "[t]he SVPA Is Vague And Overbroad And Deprives [him] Of Fundamental Fairness Rights Guaranteed By Due Process and The New Jersey Doctrine Of Fundamental Fairness," which appears to raise a fundamental fairness argument under the U.S. Constitution, Petitioner does not address any such issue in the text of his brief.  (See Pet'r Br. at 21-24.)  As such, the Court need not address it.

'sexually violent,' it violates Mr. Bagarozy's right not to be subject to ex post facto laws." (Id. at 20.)  The State contends that because the SVPA is non-punitive, it cannot violate ex post facto doctrine.  (Resp't Br. at 9-11.)  The State is correct.

Protection against retroactive enforcement of laws stems from Article I, Section 10 of the United States Constitution, which prohibits the States from creating any "ex post facto Law." See also, Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 505 (1995).  The ex post facto doctrine is aimed at preventing the creation of  "laws that 'retroactively alter the definition of crimes or increase the punishment of criminal acts.'" Id. (citing Calder v. Bull, 3 U.S. 386, 391-391 (1798)).  The statute at issue here, which is civil in nature, does not impose punishment or define criminal behavior and therefore "does not raise ex post facto concerns."  See Hendricks, 521 U.S. at 370-71.  Moreover, as previously addressed in this opinion, there is no statutory restriction on the amount of time that can pass between an individual's predicate offense and the State's petition for commitment.  See P.Z.H., 873 A.2d at 599-600.  Petitioner's argument as to the effective date of the SVPA in relation to his predicate offenses is unpersuasive, and Petitioner's argument that the SVPA violates the ex post facto doctrine must fail.

**B.      The SVPA Does Not Violate Double Jeopardy Doctrine**

Petitioner also argues that the SVPA places all potential defendants at risk of being doubly punished for the same crime.  (Pet'r Br. at 17-20.)  The State again argues that because the SVPA is civil in nature, commitment pursuant to the Act cannot constitute double jeopardy. (Resp't Br. at 9-11.)  The State is again correct.

The Fifth Amendment provides that no person shall be "twice put in jeopardy of life or limb" for the same offense.  U.S. Const. amend. V.  This protection prevents the Government

from punishing or attempting to punish an individual twice for the same criminal offense.  U.S. v. Ursery, 518 U.S. 267, 273 (1996).  Because the SVPA is civil in nature, commitment proceedings under the Act do not represent a "second prosecution" protected by the Double Jeopardy Clause.  See Hendricks, 521 U.S. at 369 (rejecting claim that Kansas SVPA violated Double Jeopardy Clause).

Accordingly, Petitioner's claim that he has been subjected to double jeopardy must fail.


## VI.     Petitioner's Right to a Jury Trial Under the SVPA

Petitioner argues that the SVPA violates his right to due process because its procedural provisions fail to provide for a jury trial.  (Pet'r Br. at 24-25.)  Petitioner also contends that the SVPA "exceeds the scope" of the Kansas sexual predator statute[7] upheld by the Supreme Court in Kansas v. Hendricks and therefore deprives him of due process protections.  (Id.)  In opposition, the State argues that "[t]he federal Constitution does not provide for a right to a trial by jury in civil commitment proceedings" and that the difference between the New Jersey SVPA and other civil commitment statutes that specifically provide for a jury trial is not relevant. (Resp't Br. at 11-13.)

Petitioner has not specified in his argument whether he asserts a federal due process violation under the Sixth Amendment or the Seventh Amendment.  (Pet'r Br. at 24-25.) However, because he is arguing here under the header that the Act is essentially criminal, the Court will assume that he is asserting a claim under the Sixth Amendment, which provides

---

[7] The related Kansas statute requires that a trial be conducted prior to an individual's commitment and provides that either party involved may request a jury trial.  KS ST § 59-29a06.

23

criminal defendants the right to a trial by jury.  (Pet'r Br. at 17-20, 24-25); U.S. Const. amend. VI.

As explained above, the SVPA is a civil statute.  See, e.g., Bellamy, 835 A.2d at 1238; W.Z., 801 A.2d at 211; Bailey, 2006 WL 2264031 at *9; Rivera, 2006 WL 3399427 at *9. Indeed, courts have specifically held that Sixth Amendment rights "[do] no attach to civil proceedings such as the commitment proceeding [pursuant to the SVPA] at issue here."  Cooper v. Heyman, No. 06-4523, 2007 WL 4287682, at *7 (D.N.J. Dec. 4, 2007) (citing Carty v. Nelson, 426 F.3d 1064, 1073 (9th Cir. 2005)).  Therefore, the Court is satisfied that Petitioner's argument must fail.

To the extent Petitioner seeks to argue that he has been denied the right to a jury trial for civil proceedings pursuant to the Seventh Amendment, such claim must likewise fail.  The United States Supreme Court has never held that "due process requires a jury trial in civil commitment proceedings,"[8] nor has it "incorporate[d] the Seventh Amendment right to a jury for such cases" into the Fourteenth Amendment to be applied against the States.  Poole v. Goodno, 335 F.3d 705, 710-711 (8th Cir. 2003).  See also Salerno v. NJ, No. 07-3551, 2008 WL 1782494, at *3 (D.N.J. Apr. 17, 2008) (citing to Poole in support of its holding that a habeas petitioner did not have a right to a jury trial prior to commitment under the SVPA).

---

[8] Because of the civil nature of involuntary commitment proceedings, the Supreme Court has denied a range of due process protections otherwise afforded to criminal defendants.  See, e.g., Hendricks, 521 U.S. at 369-371 (rejecting claimed violations of Double Jeopardy and *ex post facto* protections); Allen v. Illinois, 478 U.S. 364, 374 (1986) (rejecting claim that civil commitment defendants are afforded Fifth Amendment guarantee against self-incrimination); Addington v. Texas, 441 U.S. 418, 430-433 (1979) (rejecting "beyond a reasonable doubt" standard as necessary to preserve due process rights of an individual facing civil commitment).

24

The Supreme Court has specifically held, however, that there is no Seventh Amendment right to a jury trial in a civil state court proceeding.  See City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 719 (1999) (explaining that "it is settled law that the Seventh Amendment does not apply" in contexts where a suit is brought in state court). Therefore, to the extent that Petitioner raises a Seventh Amendment argument, his claims are without merit.

The Court is further unconvinced that the New Jersey SVPA exceeds the scope of the Kansas statute that was upheld as constitutional in Hendricks.  521 U.S. at 371.  As is discussed above, several courts of this District and of the State of New Jersey have already determined that the SVPA does not exceed the scope of the Kansas statute upheld in Hendricks.   See, e.g., Rivera, 2006 WL 3399427, at *9 (finding SVPA is "essentially the same as the Kansas . . . statut[e]" upheld in Hendricks); Fournier, 2007 WL 2159584, at *10  (noting the SVPA is "essentially the same" as the statute in Hendricks); W.Z., 801 A.2d at 211 (finding that SVPA is "virtually identical" to the Kansas civil statute at issue in Hendricks).

Moreover, in review of the Kansas statute, the Supreme Court did not base its decision on the fact that the statute provided for the option of a jury trial.  Indeed, the majority only addressed the issue of jury trials in finding that provision of the Kansas act, along with other procedural safeguards provided, did not turn proceedings pursuant to the act into criminal prosecutions. Hendricks, 521 U.S. at 364-365.  Therefore, Petitioner's argument that the SVPA deprives him of due process because it is unlike the Kansas SVP statute is without merit.

For the reasons set forth above, Petitioner's arguments on this issue fail.

**VII.    Expert Opinions At Commitment Hearing**

Petitioner next argues he was denied due process under the SVPA, which provides that a respondent has the right to cross-examine witnesses because Judge Freedman, at the commitment hearing, considered the testimony of medical experts that was based largely upon hearsay.  (Pet'r Br. at 25-28.)  Petitioner argues that the admission of hearsay in a hearing to commit someone under the SVPA "runs the risk of undermining . . . rights afforded under the SVPA," which he contends are "similar" to a criminal defendant's right to confront witnesses.  (Id.)  The State, in opposition, argues that Petitioner's claim relies on an issue of state law and therefore is not appropriate for habeas review, and also argues that the Confrontation Clause of the U.S. Constitution provides Petitioner no relief here.  (Resp't Br. at 13-15.)

In support of his argument, Petitioner relies entirely on the New Jersey Rules of Evidence and New Jersey state law.  (See Pet'r Br. at 25-28.)  First, he cites to New Jersey Evidence Rule 802 and next relies on New Jersey state case law.  (Id.)  Petitioner provides no support for an argument that he was deprived of any right protected by the U.S. Constitution.  (See id.)

The New Jersey Appellate Division here  rejected Petitioner's evidentiary arguments on appeal of his commitment hearing.  (Unpublished App. Div. Op., Ex. A to DaCosta Decl., at 31-32.)  In short, the Appellate Division found that Judge Freedman gave "due regard" to the testimony of witnesses and experts at the hearing.  (Id.)

As is explained above,  habeas courts must defer to the factual determinations of a state court.  See. Williams v. Taylor, 529 U.S. at 386.  Where Petitioner has alleged no specific violation of federal law, or has raised no federal constitutional issue, his evidentiary argument is not within the province of the Court to address.  See 28 U.S.C. §2254(d)(2); McCandless v.

Vaughn, 172 F.3d 255, 262 (3d Cir. 1999) (holding that petitioner's failure to raise federal

constitutional issues in state court, coupled with failure to cite to federal cases or perform a

constitutional analysis precluded hearsay challenge on habeas review).  Therefore, the Court is

not at liberty to review the evidentiary determinations of the state court here, and supports the

Appellate Division's findings.


**VIII.   Statutory Authority of the Attorney General In Initiating Commitment Proceedings
Against Petitioner and Alleged Violations of the Interstate Correction Compact**

Petitioner argues that the New Jersey Attorney General exceeded his authority under the

SVPA when he petitioned to have a federal prisoner examined for commitment eligibility.[9]

(Pet'r Br. at 28-32.)  Specifically, Petitioner argues that the SVPA cannot be enforced against

federal prisoners because "[t]he SVPA itself expressly limits the scope of civil commitment

procedures to individuals in state correctional . . . facilities."  (Id. at 30.)  Additionally, Petitioner

argues that because the New Jersey Interstate Correctional Compact does not permit federal

prisoners to be transferred to a state facility such as the one in which Petitioner is currently

detained, the Attorney General was improper in exercising his authority under the SVPA.  (Id. at

29-34.)  The State argues that Petitioner has raised an unreviewable issue of state statutory

construction, and that the Attorney General had the proper authority under the SVPA to petition

for the commitment of a federal prisoner.  (Resp't Br. at 15-17.)

---

[9]  At the time that Mr. Bagarozy's Petition for Civil Commitment was submitted, the
sitting Attorney General was Mr. Peter C. Harvey, hence the Court's use of the masculine
pronoun when referring to the Attorney General.  (Pet. for Civil Commitment, Ex. M to Kamison
Decl. at 1.)

27

The plain language of the Act grants the Attorney General broad authority to seek the commitment of an individual who qualifies for commitment proceedings.  For example, the procedural guidelines which provide for how an agency with jurisdiction notifies the Attorney General are "not jurisdictional, and failure to comply with them in no way prevents the Attorney General from initiating a proceeding against a person otherwise subject to the provisions of [the Act]."  N.J.S.A. § 30:4-27.27(e).  As is discussed above, the SVPA allows for the commitment of "any person who has committed a sexually violent offense, without regard to . . . whether the person is currently incarcerated for that offense."  R.Z.R., 2005 WL 3533834 at *4.  The Attorney General may seek the commitment of qualified individuals who are not presently incarcerated, or who are incarcerated for offenses that are not sexually violent.  N.J.S.A. 30:4-27.28; P.Z.H., 873 A.2d at 599.

Petitioner raised these same arguments in his appeal before the Appellate Division of New Jersey.  R.Z.B., 919 A.2d at 872-76.  The Appellate Division rejected the merit of Petitioner's arguments, holding that the Attorney General did not exceed his statutory authority as the SVPA neither precludes a state agency from working with a federal agency to protect the public from sexually dangerous predators, nor does it take away the Attorney General's "residual power to seek commitment . . . of [even those] persons who are not presently incarcerated or otherwise confined."  Id.

Although the Court has uncovered no New Jersey Supreme Court case addressing the issue of the Attorney General's authority to initiate SVPA proceedings against a federal prisoner, the New Jersey Appellate Division has provided a cogent and persuasive argument in support of their denial of Petitioner's claim here.  See R.Z.B., 919 A.2d at 872-76.  See also, In re Civil

Commitment of M.L.V., 909 A.2d 286, 292 (N.J.Super. App. Div. 2006) (Attorney General is not barred under statute from seeking commitment of an individual released on parole), cert. denied 919 A.2d 848 (2006).  Intermediate state appellate courts have additionally agreed that the New Jersey Legislature intended the Attorney General to have broad power to seek commitment of those individuals the State believes to be dangerous.  See M.L.V., 909 A.2d at 292; P.Z.H., 873 A.2d at 599.

For the foregoing reasons, the Court is satisfied that the Attorney General did not overstep his statutory authority in seeking Mr. Bagarozy's commitment under the Act.  As such, Petitioner's argument fails.

Petitioner's claims that the Attorney General's actions here violate the New Jersey Interstate Correctional Compact similarly fail, as they rest on a matter of state law that is not within the scope of the Court's habeas review.  28 U.S.C. §2254(d).  See also, Estelle v. McGuire 502 U.S. 62, 67 (1991) (holding "federal habeas corpus relief does not lie for errors of state law") (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)).

## CERTIFICATE OF APPEALABILITY

This Court must determine whether a certificate of appealability should issue.  L.A.R. 22.2.  The Court may issue a certificate only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

For the reasons discussed above, Petitioner has failed to satisfy this standard.  Therefore, this Court declines to issue a certificate of appealability pursuant to § 2253(c)(2).

## **CONCLUSION**

For the reasons set forth above, Petitioner's request for a write of habeas corpus is denied. An appropriate form of Order will be filed.

     s/ Stanley R. Chesler
_____
STANLEY R. CHESLER, U.S.D.J.

Dated: September 23, 2008